UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BEARLEE, LLC a Michigan limited liability company and RUNCAL, LLC a Michigan limited liability company,

Plaintiffs,

v.

CHARTER TOWNSHIP OF TEXAS, a Michigan charter township,

Defendant.

Case No. 1:25-cv-1940

Hon. Paul L. Maloney

## PLAINTIFFS' FIRST SUPPLEMENTAL COMPLAINT

Plaintiffs BEARLEE, LLC and RUNCAL, LLC (together "Plaintiffs") by their attorneys Miller, Canfield, Paddock and Stone, PLC, states for their First Supplemental Complaint under Federal Rule of Civil Procedure 15(d) against Defendant Charter Township of Texas ("Township"):

247.    Plaintiffs incorporate by reference all prior allegations and counts contained in Plaintiffs' First Amended Complaint as if fully set forth herein.

**Plaintiffs' protected First Amendment activity.**

248.    On December 31, 2025, Plaintiffs filed their initial Complaint in this matter, alleging, among other things, that the Township's conduct and ordinances constitute violations of due process, impermissible prior restraints on speech, violations of the First and Fourteen Amendments, unlawful regulatory taking, and preemption under state law.

249.    On February 25, 2026, in lieu of filing an Answer, Defendant moved to dismiss the Complaint, arguing, in part, that Plaintiffs' claims were not ripe and therefore lacked subject-matter jurisdiction.

50968490.2/164104.00001

250.    In response, Plaintiffs filed a First Amended Complaint on March 18, 2026, adding further factual detail and illustrative examples to support and corroborate the constitutional violations. Plaintiffs explained that the Township reversed course, retroactively revoked prior approvals, and imposed a sweeping, standardless regulatory scheme that bans "events" for three months each year and limits them during the remaining months. Plaintiffs further alleged ongoing harm, including being forced to cease programming, turn away thousands of booking requests, restrict their speech, and experience declining revenue as a result of the Township's ever-changing, vague regulatory position.

251.    Defendant again moved to dismiss the First Amended Complaint, continuing to assert that Plaintiffs' claims are not ripe. In its Motions to Dismiss, and throughout this litigation, Defendant has consistently asserted that Plaintiffs' claims are "unripe or based entirely on hypothetical harm[]"  and that "Plaintiffs have not received a single citation or any other form of sanction." ECF No. 22, PageID.666, 693.

252.    Contrary to Defendant's assertions, the Township's enforcement is not hypothetical, Plaintiffs are suffering ongoing cognizable harm. Although Plaintiffs maintain their position that their claims were ripe when they filed the initial complaint and the First Amended Complaint, Defendant has since engaged in conduct that conclusively establishes ripeness and independently constitutes actionable retaliation in violation of the First Amendment.

253.    By commencing and prosecuting this action on December 31, 2025, Plaintiffs expanded upon their engagement in constitutionally protected activity to include litigation challenging the Township's ordinances and enforcement practices.

254.    Plaintiffs also continued to engage in protected First Amendment activity through communications with Township officials, defense of their business operations, and participation in regulatory processes relating to the Backyard.

255.    Plaintiffs' continued operation of the Backyard which hosts gatherings, entertainment, and family-oriented activities constitutes expressive and commercial speech protected by the First Amendment.

**Township's enhanced enforcement since filing suit.**

256.    Since the filing of the original complaint, the following material facts have occurred.

257.    Shortly after Plaintiffs initiated this litigation, the Township dramatically increased its enforcement activity directed at Plaintiffs' property.

258.    On March 10, 2026—two weeks in to the March-November time period where Plaintiffs are subject to the one-event-per-week cap—the Township's Ordinance Enforcement Officer initiated contact via email to "remind" Plaintiffs of applicable ordinances, marking a shift in enforcement posture. March 10, 2026 email is attached as **Exhibit A.**

259.    On March 16, 2026, the Township's Fire Marshal appeared at the Backyard purportedly in response to an alleged complaint about the tent in use at the Backyard, but did not conduct a meaningful inspection of the tent. Declaration of Kelly Sandmeyer attached as **Exhibit B** at ¶7.

260.    Upon information and belief, Township officials instructed the Township's Fire Marshal to conduct the March 16, 2026, site visit which amounts to pretextual enforcement activity and harassment.

50968490.2/164104.00001

261.    On April 16, 2026, the Township's Ordinance Enforcement Officer visited the Backyard to assert that Plaintiffs' outdoor bar structure was too large, despite prior site plan approvals and compliance with applicable standards. *Id.* at ¶8.

262.    This assertion contradicted prior Township Planning Commission approvals and governing standards, which included approval for an outdoor structure measuring 8 x 20 feet (160 square feet) because the challenged structure is smaller, measuring 10 x 12 feet (120 square feet). *Id.* at ¶9.

263.    Additionally, the Township has allowed Plaintiffs to install structures under 200 square feet without additional approval. *Id.*

264.    Further, Plaintiffs' Michigan Liquor Control License allows up to three additional, outdoor bars at the Backyard. *Id.*

265.    Despite Plaintiffs' outdoor bar structure being within applicable size limits, the Township pursued enforcement activity anyway.  *Id.*

266.    The Township's position regarding the outdoor bar was not based on any change in law or facts, but instead followed Plaintiffs' initiation of this lawsuit.

267.    On May 20, 2026, despite the Township's arguments "Plaintiffs have not received a single citation or any other form of sanction" (ECF No. 22, PageID.693), the Township Ordinance Enforcement Officer issued a civil infraction to Plaintiffs for hosting events. See ECF No. 26-1, PageID.748-749.

268.    The citation and accompanying letter explain that the violation is for "exceeding the requirement of no more than (1) event per week at this location" and advises that Plaintiffs will receive a hearing date from the 8th District Court of Kalamazoo County. *See id.*

- 4 -

269.    The citation and cover letter failed to identify the date or conduct of any alleged violation or the basis for determining that multiple "events" occurred within the same week.

270.    The Township's characterization of the citation was terse and provided no context for how Plaintiffs' supposedly incurred the citation.

271.    The absence of factual grounding underscores the arbitrary and pretextual nature of the Township's enforcement action.

272.    On May 22, 2026, the Township's Fire Marshal again visited the Backyard to conduct a more extensive inspection of the premises including the outdoor bar structure and tent. Ex B at ¶12.

273.    During the May 22, 2026 inspection, the Fire Marshal misstated that because the outdoor bar exceeded 140 square feet it exceeded size limits, however, the outdoor bar structure is only 120 square feet and is within applicable size limits. Ex B, at ¶13.

274.    Upon information and belief, Township officials instructed the Township's Fire Marshal to conduct the May 22, 2026 site visit which amounts to additional pretextual enforcement activity and harassment.

275.    The actions and timing detailed above reflect a retaliatory response to Plaintiffs' protected conduct.

276.    On May 25, 2026, Plaintiffs received a letter dated May 21, 2026, from the Township purporting to explain the basis for the May 20, 2026 citation. May 25, 2026, letter attached as **Exhibit C**.

277.    This letter retroactively labeled Plaintiffs' ordinary business operations and gatherings as "events" to justify the Township's May 20, 2026 citation. *See id.*

- 5 -

278.    As with the Township's inability to define what "event" means, this new characterization of "events" is arbitrary and inconsistent with the Township's prior concession to the operations, gatherings and activities that were never previously determined to be "events".

279.    Regarding alleged "events" the May 21, 2026 letter states:

Over the last two (2) weeks, four (4) events have been held within the event tent:
1.  May 9, 2026 – Mommy and Me Tea Party
2.  May 15, 2026 – School Graduation Event #1
3.  May 15, 2026 – School Graduation Event #2
4.  May 16, 2026 – Backyard Book Bazaar

The Township has discussed the limitation of one (1) event per week with you on several occasions. At this time, the Township will issue a civil infraction citation for each event held in excess of the approved limit of one (1) event per week.

**Exhibit C**.

280.    Each of these alleged "events" were indistinguishable from the gatherings and private bookings that have occurred at the Backyard during the three years since the Backyard opened.

281.    The May 9, 2026 Mommy and Me Tea Party involved fewer than 95 attendees, occurred between 1 and 3 p.m. and involved children and their families enjoying snacks, beverages, themed decorations and party hats. Ex B, at ¶¶17-19.

282.    Children also planted succulents as gifts for their mothers for the impending Mother's Day. *Id.* at ¶19.

283.    The tea party also included staged family photos, decorating teapots and short, intermittent dance contests. *Id.*

284.    Plaintiffs' entire indoor and outdoor facility remained open to the public during the tea party. *Id.* at ¶20.

285.    Plaintiffs' owner reviewed data generated by a remote noise monitoring system, which was operable during the Mommy and Me Tea Party, to ensure that the gathering did not

- 6 -

exceed the 65 dB limit at the boundary of the Backyard. The noise monitoring system reports sounds when they exceed 60 dB, which in Plaintiffs' experience, is typically triggered only during ordinary neighborhood activity, such as lawn mowing, passing vehicles, or power tools. *Id.* at ¶23.

286.    On May 9, 2026, the noise monitoring system indicated limited noise events related to normal ambient conditions and not indicative of the Mommy and Me Tea Party exceeding the 65 dB limit at the boundary of our property. *Id.* at ¶24.

287.    Plaintiffs hosted a nearly identical tea party in 2024 without issue and without the Township determining that the 2024 Mommy and Me Tea Party was an event. *Id.* at ¶22.

288.    The two alleged May 15, 2026 "events" were a gathering of children and their families to celebrate preschool graduation between 10:00 a.m. and 1:00 p.m. and involved no more than 99 individuals at any one time. *Id.* at ¶¶25-26.

289.    The preschool graduation, which was comparable to a typical daytime lunch service, used both the indoor facilities and represented the third year that preschoolers celebrated graduation at the Backyard. *Id.* at ¶92.

290.    But this is the first year that the Township determined that preschool graduation was an "event". *Id.* at ¶30.

291.    Although the Township's letter alleges that Plaintiffs' hosted two preschool graduation "event" on May 15, 2026, later that same day, the Backyard actually had a private booking of education administrators, teachers and a group of education industry insurance providers between 5:00 p.m. to 9:00 p.m. See Ex C and Ex B at ¶¶31-32.

292.    This gathering, which was occurring for the third consecutive year, included a single speaker playing background music and indoor operations continued as usual during the evening. *Id.* at ¶¶33-36.

293.    However, 2026 is the first year that the Township determined this private gathering to be an "event" counting against the one-event-per-week cap. *Id.* at ¶33.

294.    Finally, on May 16, 2026, an informal book fair occurred at the Backyard from 4:00 p.m. to 7:00 p.m. *Id.* at ¶37.

295.    The book fair was oriented towards over-21 guests and involved books on display under a tent, book-related vendors and local authors interacting with guests and signing books purchased by guests and included a single speaker playing background music. *Id.* at ¶¶38-41.

296.    Each of the activities cited as the basis for enforcement that occurred on May 9, 15 and 16, 2026 were materially indistinguishable from prior uses that the Township had never before treated as "events" and occurred without enforcement.

297.    The Township's sudden reclassification of ordinary business operations as violations was inconsistent with its prior enforcement practices and interpretations.

298.    Each cited basis for enforcement contradicts prior Township approvals, established interpretations, or identical prior conduct that was never treated as a violation.

299.    The Township's retaliatory enforcement relies on the same undefined "event" standard challenged in Plaintiffs' First Amended Complaint.

300.    The Township's May 21, 2026, letter also highlighted a range of site plan violations resulting from the May 19, 2026, inspection including the size of the outdoor bar structure, the size of Plaintiffs' tent and newly raised stormwater management improvements. See ECF No. 26-1, PageID.748.

301.    The letter went on to demand correction actions and threatened "additional enforcement action, including civil infraction citation and any other remedies available under Section 36-7.4, Sanctions, of the Township Zoning Ordinance." *Id.*

**COUNT IX – FIRST AMENDMENT RETALIATION AGAINST PLAINTIFFS (42 U.S.C. § 1983)**

302.    Plaintiffs incorporate the preceding paragraphs as though fully restated herein.

303.    The First Amendment of the United States Constitution, through the Due Process Clause of the Fourteenth Amendment, is applicable to local units of government like Charter Township of Texas.

304.    Plaintiffs engaged in protected First Amendment activity by (1) filing and prosecuting this action; (2) communicating with Township officials concerning the ordinance and its enforcement; and (3) continuing to engage in expressive commercial activity by hosting and entertaining guests on their property.

305.    The Township's May 20, 2026, citation expressly threatened legal action if Plaintiffs continued to host events or play music, thereby escalating the matter into a legal dispute and compelling Plaintiffs to appear and defend themselves before the 8th District Court of Kalamazoo County. Notably, the citation failed to identify any specific event or conduct upon which it was based, underscoring its vague and pretextual nature and supporting the inference that it was retaliatory in nature.

306.    Also implicit in the Township's May 20, 2026, citation was the Township's threat that it would continue similar enforcement activity against Plaintiffs if Plaintiffs did not abandon their claims against the Township.

307.    The Township's enforcement actions were undertaken shortly after Plaintiffs filed suit and while Defendant's motion to dismiss—premised on lack of enforcement—was pending.

308.    Following Plaintiffs' protected First Amendment activity, the Township escalated enforcement including: (1) initiation of inspections not previously conducted; (2) assertion of size

50968490.2/164104.00001

compliant structures as violations; (3) reclassified routine activities as "events" (4) issuance of a civil infraction citation; and (5) threats of ongoing enforcement and additional sanctions.

309.    This escalation, combined with temporal proximity to Plaintiffs' recently initiated litigation, supports an inference that Plaintiffs' protected activity was a substantial or motivating factor in the Township's new enforcement posture.

310.    The Township's enforcement actions are all intended to punish Plaintiffs for filing a lawsuit, deter Plaintiffs from continuing to assert their rights and to chill Plaintiffs' protection expression and petitioning activity.

311.    The Township's overt and implicit threats against Plaintiffs constitute adverse actions that would chill and deter a person of ordinary firmness from continuing to prosecute the above-entitled action against the Township.

312.    The retaliatory actions were taken by Township officials responsible for ordinance enforcement and implementation and reflect official policy, custom, or ratified decision-making attributable to the Township.

313.    As a direct result of the Township's enforcement action, Plaintiffs have curtailed their speech and have suffered damage including being forced to cease programming, turn away thousands of booking requests, restrict their speech, experience declining revenue, discouraging prospective business buyers and incurring attorneys' fees to defend against and challenge a vague, retaliatory citation and promises of continued and increased enforcement.

314.    Plaintiffs' damages were caused by the Township's official policies and settled practice and not by isolated or unauthorized acts.

WHEREFORE, Plaintiffs' request that this Court enter a judgment in its favor and against Charter Township of Texas (1) finding that Charter Township of Texas retaliated against Plaintiffs

- 10 -

50968490.2/164104.00001

in violation of the First Amendment, (2) all available relief, including actual, consequential, punitive, exemplary, and special damages, (3) awarding Plaintiffs its attorneys' fees under 42 U.S.C. § 1988 and also its costs incurred in bringing this challenge, and (4) awarding Plaintiffs any other relief the Court deems necessary and appropriate.

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: /s/ Joseph M. Infante

Joseph M. Infante (P68719)
Christopher J. Gartman (P83286)
Attorneys for Plaintiffs
99 Monroe Avenue NW, Suite 1200
Grand Rapids, Michigan 49503
(616) 776-6333
infante@millercanfield.com
gartman@millercanfield.com

Dated: June 5, 2026

- 11 -

50968490.2/164104.00001