UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| BEARLEE, LLC,<br>AND<br>RUNCAL, LLC,<br>Plaintiffs,<br><br>v.<br><br>CHARTER TOWNSHIP OF TEXAS,<br>Defendant. | No. 1:25-cv-1940<br><br>Honorable Paul L. Maloney |

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS TO DISMISS**

This case is before the court on two motions to dismiss: (1) Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint, ECF No. 21, and (2) Defendant's Motion to Dismiss Plaintiffs' First Supplemental Complaint. ECF No. 34. For the reasons set forth below, the court **GRANTS** in part and **DENIES** in part Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint and **DENIES** Defendant's Motion to Dismiss Plaintiffs' First Supplemental Complaint.

## I. BACKGROUND

This case arises from a zoning dispute. To sum it up in a sentence, the parties disagree over (1) the definition of the word "events" in Defendant's zoning ordinances and (2) the scope and frequency of "events" that Plaintiffs may host at their business.

In 2021, Plaintiffs decided to open the Backyard—a bar and restaurant located in Texas Charter Township. ECF No. 13 PageID.339. Plaintiffs originally envisioned that the

Backyard would include a restaurant, seasonal attractions, and outdoor activities. *Id.* PageID.340. Based on this vision, Plaintiffs obtained the necessary approvals—including an approved site plan—from Defendant to begin construction. *Id.* PageID.341. Plaintiffs also secured various licenses and permits from the Michigan Liquor Control Commission ("MLCC"). *Id.* PageID.342.

Plaintiffs' vision, however, began to expand. Thus, under the procedures set out in Texas Township Zoning Ordinances §§ 36–6.1.1.B.ii and 36.6.1.1.B.vii, Plaintiffs sought a series of administrative approvals for amendments to their site plan. *Id.* PageID.341. Defendant approved all Plaintiffs' amendments. *Id.* Throughout 2023, Plaintiffs continued seeking amendments to their site plan,[1] and Defendant continued granting them. *Id.*

In July of 2023, construction was completed and the Backyard opened for business. *Id.* PageID.344. In Winter of 2023, the Backyard hosted various winter-themed events. *Id.* For example, the Backyard organized Winter Wonderland, a holiday light display. *Id.* The Backyard also threw a New Year's Eve Party and hosted various private group bookings throughout the holiday season. *Id.*

Defendant then determined that the Backyard had exceeded the scope of what Defendant had approved in the original site plan. ECF No. 22 PageID.668. Specifically, Defendant decided that the Backyard now qualified as a "banquet hall/event center," defined within Defendant's zoning ordinances as "a privately-owned structure or area of property, including flexible interior space divided into various-sized spaces, used for the purposes of

[1] For example, Defendant approved Plaintiffs' request to build a fence around the property, to install pergolas, and to relocate a ticket booth building. *Id.*

hosting meetings, public performances, private receptions or parties, banquets, weddings, or similar events and for commercial purposes or gain." Texas Township Zoning Ordinance Definitions.

Defendant's zoning ordinances require businesses seeking to operate a "banquet hall/event center" to apply for and obtain an Event Center SEU Permit. Thus, on December 12, 2023, Defendant sent Plaintiffs a letter requiring Plaintiffs to submit a revised site plan application and Event Center SEU Permit application by January 26, 2024. ECF No. 13 PageID.345. In their Event Center SEU Permit application, Plaintiffs stated that they intended "to host events such as, or similar to . . . weddings, showers, corporate events, staff parties, live music, corn hole tournaments, holiday themed events, trick or treating, and the formerly popular Winter Wonderland." *Id.* PageID.346.

Defendant approved Plaintiffs' Event Center SEU Permit, but with four restrictive conditions "to mitigate noise levels and avoid disturbing the peace of the area and existing nearby residences." *Id.* First, Defendant required that Plaintiffs "limit the Event Center activities in the 'yard' area (excludes restaurant and patio) and operating hours to 9:00 a.m. to 9:00 p.m. Sunday through Thursday and 9:00 a.m. to 11:00 p.m. on Friday and Saturday." *Id.* Second, Defendant required that Plaintiffs' music "cease no later than 11:00 p.m." *Id.* Third, Defendant required that noise levels not exceed "65dB(A) from 7:00 a.m. to 10:00 p.m. and 55 dB(A) from 10:00 p.m. to close." *Id.* Finally, and most controversially for purposes of this litigation, Defendant cabined the number of "events" Plaintiffs could host to "no more than one event . . . per week during the months of March through November."

*Id.* Plaintiffs interpret this last condition to "by its terms ban 'events' entirely during December-February." *Id.* PageID.347.

Plaintiffs have also interpreted Defendant's ordinances as requiring Plaintiffs to seek pre-approval for "events" in the form of temporary site plan amendments *Id.* PageID.349. According to Plaintiffs, there are no criteria or guidelines that Defendant follows in deciding whether to approve the "events." *Id.*

The heart of this litigation, however, revolves around the fact that Defendant has failed to provide a consistent definition of the word "events." *Id.* PageID.349–351. From Plaintiffs' perspective, Defendant's failure to define the word "events" has made it impossible for Plaintiffs to know whether they are in compliance with Defendant's ordinances. *Id.* PageID.353.

Ultimately, Plaintiffs take issue with the four restrictive conditions Defendant imposed in their Event Center SEU Permit, Defendant's failure to define "events," and Defendant's requirement that Plaintiffs seek pre-approval for "events." Defendant points out that Texas Charter Township's Zoning Board of Appeals (the "ZBA") is the entity with the authority to hear appeals, grant variances, and interpret the zoning ordinances' provisions. ECF No. 22 PageID.679. Plaintiffs have not sought guidance or clarification from the ZBA.

Instead of taking this matter to the ZBA, Plaintiffs filed this lawsuit. ECF No. 13 PageID.346. Plaintiffs bring eight counts: (1) an as-applied and facial due process void for vagueness claim, (2) an as-applied and facial prior restraint on speech claim, (3) an as-applied and facial due process liberty interest in business operations claim, (4) a facial challenge to the violation of freedom of speech (expressive and commercial), (5) an as-applied challenge

to the violation of freedom of speech, (6) an as-applied and facial regulatory takings claim, (7) an as-applied and facial equal protection claim, and (8) a state law conflict preemption claim. *Id.* PageID.356–375.

In response, Defendant filed its Motion to Dismiss Plaintiffs' First Amended Complaint on April 16, 2026. ECF No. 21. Defendant seeks dismissal of all Plaintiffs' claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 22 PageID.666.

After Defendant filed its Motion to Dismiss Plaintiffs' First Amended Complaint, but before Plaintiffs filed their response, Defendant issued its first citation[2] to Plaintiffs. ECF No. 26 PageID.718. The citation claims that Plaintiffs violated the one-event-per-week restriction. *Id.*

Plaintiffs then filed their First Supplemental Complaint, where they brought one additional count: a claim for First Amendment retaliation. ECF No. 33 PageID.852.

Defendant responded by filing its Motion to Dismiss Plaintiffs' First Supplemental Complaint. ECF No. 34. Defendant again made a 12(b)(1) and 12(b)(6) challenge. ECF No. 35 PageID.862.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) provides an avenue through which a party may seek dismissal of a claim for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A party challenging the court's subject matter jurisdiction may make either a facial or a factual attack. *Mackinac Ctr. for Pub. Pol'y v. U.S. Dep't of Educ.*, 175 F.4th 692, 699 (6th Cir.

[2] To the court's knowledge, this is the only citation Defendant has issued to Plaintiffs.

2026). A facial attack—the Defendant's chosen attack method here—challenges whether the complaint "adequately pled standing even accepting its facts as true" and construing the complaint's allegations in the light most favorable to the nonmoving party. *Id.* (quoting *Ass'n of Am. Physicians & Surgeons v. FDA*, 13 F.4th 531, 543 (6th Cir. 2021)). When a defendant lobbies a 12(b)(1) challenge, the plaintiff must prove the court's subject matter jurisdiction to survive the motion to dismiss. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

A party may also seek dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. When analyzing a motion to dismiss for failure to state a claim, courts take the nonmoving party's factual allegations as true and construe all reasonable inferences in the nonmoving party's favor. *Paris v. MacAllister Mach. Co.*, 175 F.4th 787, 795 (6th Cir. 2026). A complaint will survive a 12(b)(6) challenge when it contains sufficient "factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 830 F.3d 376, 382–83 (6th Cir. 2016)). A claim is plausible on its face when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although courts typically only consider allegations in the complaint, courts may also consider documents attached to the complaint or incorporated into it by reference. *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999).

## III. ANALYSIS

The court will dismiss without prejudice Plaintiffs' as-applied challenges in Counts I-VII and Count VIII because they are not ripe. The facial challenges in Counts I-VII, however, will remain because (1) the citation Defendant issued created a concrete injury that conferred standing upon Plaintiffs and (2) Defendant's factual-based arguments are inappropriate at the 12(b)(6) stage. Finally, Count IX will remain because it is ripe and Plaintiffs plausibly pled a claim for First Amendment retaliation.

### A. The court grants Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint for Plaintiffs' as-applied challenges in Counts I-VII and for Count VIII.

Ripeness is an important justiciability doctrine, *Trump v. New York*, 592 U.S. 125, 131 (2020), that helps ensure federal courts do not exceed the bounds of their constitutional grant of authority to decide only "cases" and "controversies." *See Flast v. Cohen*, 392 U.S. 83, 95 (1968) ("Justiciability is the term of art employed to give expression to this dual limitation placed upon federal courts by the case-and-controversy requirement."). A claim is not ripe when it is based on hypothetical or contingent future events that have not yet come to pass. *Texas v. United States*, 523 U.S. 296, 300 (1998). In other words, a claim is not ripe when it is brought too soon. A court analyzing whether a claim is ripe must "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 301 (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 149 (1967)).

**1. The as-applied challenges in Counts I-VII are not ripe.**

Plaintiffs' as-applied challenges boil down to one complaint: The word "events" in Defendant's Zoning Ordinance Section 4.57 is unclear.[3] Defendant responds that Plaintiffs should seek clarification from the ZBA, the administrative entity with the authority to hear appeals, grant variances, and interpret the zoning ordinances' provisions.

**i. Plaintiffs' as-applied challenges are not fit for judicial review because Plaintiffs failed to satisfy the finality requirement.**

In the land-use context, ripeness requires that the government reach a final decision before a court may consider the claim. *Pakdel v. City & Cnty. of S.F.*, 594 U.S. 474, 475 (2021). Put simply, ripeness in the land-use context requires finality. *Id.* at 477. The finality requirement considers "whether the initial decision maker has arrived at a definitive position on the issue." *Id.* (internal quotations and citations omitted). And while "nothing more than *de facto* finality is necessary," the government nevertheless must be "committed to a position" such that "potential ambiguities evaporate and the dispute is ripe for judicial resolution." *Id.* at 479. As the Supreme Court put it, "until the government makes up its mind, a court will be hard pressed to determine whether the plaintiff has suffered a constitutional violation." *Id.* at 475.

Determining the ripeness of Plaintiffs' as-applied challenges comes down to one question: whether bringing this matter to the ZBA is a pre-requisite for finality—and therefore a ripeness requirement—or a thinly-veiled attempt to resurrect the failure to exhaust administrative remedies requirement. Defendant urges the first conclusion, and Plaintiffs

[3] Zoning Ordinance 4.57 provides, in part, that "the Planning commission shall establish the hours and frequency of events hosted by the use in the special exception permit."

argue for the latter. The court finds that bringing this matter to the ZBA is a pre-perquisite for finality.

The interplay between finality and failure to exhaust is important in the land-use context. In *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, the Supreme Court held that ripeness in the land-use context required both finality and exhaustion of administrative remedies. 473 U.S. 172, 186 (1985). This holding created a "Catch-22" situation where plaintiffs were effectively barred from bringing these lawsuits in federal court. *Knick v. Township of Scott*, 588 U.S. 180, 184–85 (2019). If the plaintiff brought the lawsuit before going to state court, then the federal court would throw out the case as unripe. *Id.* But if the plaintiff brought the lawsuit after going to state court, then res judicata would bar the claims. *Id.* The Supreme Court remedied this unjust result by abolishing the failure to exhaust requirement in the land-use context. *Id.* at 206. The Supreme Court left untouched, however, *Williamson County's* finality requirement. *See Pakdel*, 594 U.S. at 480–81 (discussing the difference between finality and failure to exhaust and noting that "ordinary finality is sufficient" for ripeness).

The line between finality and failure to exhaust is a fine one that often becomes blurred. In *Pakdel*, the Supreme Court noted that "a plaintiff's failure to properly pursue administrative procedures may render a claim unripe *if* avenues still remain for the government to clarify or change its decision." *Id.* at 480 (emphasis in original). The "if" is key: The only time ripeness requires a plaintiff to pursue further administrative procedures is when doing so would solidify the government's position such that finality can be achieved.

But if the government has already taken a definitive position, then a plaintiff need not pursue further administrative procedures.

Here—by Plaintiffs' own admission—Defendant has not taken a definitive position regarding the definition of the word "events." Plaintiffs spend over four pages of their First Amended Complaint spelling out the various ways Defendant has failed to provide a definition of "events." ECF No. 13 PageID.349–353. For example, at one point Defendant stated that event "mean[s] a private gathering of people under the tent." *Id.* at PageID.349. At another point, Defendant suggested hosting live music is an "event." *Id.* at PageID.351. And apparently Defendant acknowledged the need to clarify the definition of "events" at various meetings. *Id.* at PageID.350. Defendant clearly has not taken a definitive position on the meaning of the word "events."

Plaintiffs' argument that Defendant's one-event-per-week restriction represents Defendant's definitive position on this lawsuit and therefore satisfies the finality requirement misses the mark. A definitive answer from Defendant regarding its position on the definition of the word "events" is a necessary pre-requisite to determining whether Defendant's one-event-per-week restriction is constitutional. The same is true for deciding whether Defendant's pre-approval requirement for "events" is constitutional. The court simply cannot "determine whether a regulation has gone too far unless it knows how far the regulation goes." *Grand v. City of Univ. Heights*, 159 F.4th 507, 512 (6th Cir. 2025) (internal citations and quotations omitted). Here, that requires Defendant's definitive position regarding the definition of the word "events."

Because Defendant is not "committed to a position," *Pakdel*, 594 U.S. at 479, Plaintiffs have failed to show that the finality requirement is satisfied. As Plaintiffs point out, Defendant has no idea what its position is. Thus, Plaintiffs must seek clarification from the ZBA to determine Defendant's definitive position and achieve finality.

Plaintiffs make two final arguments in an attempt to circumvent the finality requirement. The court rejects both arguments.

First, Plaintiffs argue that the citation Defendant issued cured any ripeness concerns. As discussed below, the citation did provide Plaintiffs with standing to bring their facial challenges, but it did not cure the ripeness issue with respect to the as-applied challenges. The citation still does not clarify Defendant's position regarding the definition of "events." In other words, Defendant's position is still murky.

Second, Plaintiffs argue that seeking clarification from the ZBA is "futile." The Sixth Circuit, however, already rejected that argument in *Grand*. There, the Sixth Circuit noted that futility "is not an exception to finality; it's another way to state the rule." *Grand*, 159 F.4th at 513. Plaintiffs' futility argument therefore fails. Because Plaintiffs did not satisfy the finality requirement, Plaintiffs' as-applied challenges are not fit for judicial decision.

**ii. Withholding court consideration on Plaintiffs' as-applied challenges does not impose unfair hardship on Plaintiffs.**

When a plaintiff can gain clarity or permission from the governmental body but declines to do so, the court's decision to dismiss the plaintiff's claims without prejudice until the plaintiff can show finality does not create unfair hardship. *Id.* at 514. Here, Plaintiffs have a pathway through which they may gain clarity from Defendant: ask the ZBA. Plaintiffs have

declined to do so. Thus, dismissing Plaintiffs' claims without prejudice does not impose unfair hardship here.

And the fact that dismissal is *without prejudice* ensures that the courthouse doors remain open to Plaintiffs if, after Defendant takes a definitive position, Defendant "applies the ordinance to [Plaintiffs] in a way that violates [their] statutory or constitutional rights." *Id.* Ultimately, "when local authorities stand ready to provide whatever clarity or permission the claimant needs," the court must exercise restraint and decline to engage in "litigation by hypothetical." *Id.*

Because Plaintiffs' as-applied claims in Counts I-VII are not fit for judicial decision and withholding court consideration will not impose unfair hardship to the parties, the court dismisses without prejudice Plaintiffs' as-applied claims in Counts I-VII.

2. **Count VIII is not ripe.**

For the same reasons that the as-applied challenges in Counts I-VII are not ripe, Count VIII is not ripe either.

In Count VIII, Plaintiffs argue that the one-event-per-week restriction conflicts with the following MLCC licenses and permits: (1) Plaintiffs' MLCC entertainment permit which allows "year-round indoor and outdoor live and recorded entertainment, public viewings of monologues, closed circuit television, dialogues, still slides, and other performances contests and activities"; (2) Plaintiffs' dance permit which allows "dancing whether associated or unassociated with entertainment"; (3) Plaintiffs' outdoor service area permit with allows "alcohol service with gatherings, entertainment activities within designated outdoor service area"; and (4) Plaintiffs' Class C license with Sunday sales and additional bar permits which

allows "year-round, seven-days per week, on-premises alcohol service associated with promotion of MLCC authorized activities." ECF No. 12 PageID.374.

But just as the court must have a clear sense of how far the one-event-per-week restriction goes to assess whether it is unconstitutional as applied, the court also must have a clear sense of how far it goes to assess its consistency with state law. Again, this requires a definitive position from Defendant regarding the definition of the word "events." Because, as Plaintiffs repeatedly point out, Defendant has not taken a definitive position on the definition of "events," Plaintiffs must ask the ZBA for clarification. Plaintiffs have not done so; thus, Count VIII is not fit for judicial decision. And, for the same reasons that dismissing without prejudice the as-applied portions of Counts I-VII does not impose unfair hardship on the parties, neither does dismissing Count VIII without prejudice.

Because Count VIII is not fit for judicial decision and withholding court consideration will not impose unfair hardship, the court dismisses without prejudice Count VIII.

**B. The court denies Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint as to Plaintiffs' facial challenges in Counts I–VII.**

Defendant argues that Plaintiffs' facial challenges in Counts I–VII fail under both 12(b)(1) and 12(b)(6). Specifically, Defendant argues that (1) Plaintiffs did not suffer an injury-in-fact and therefore do not have standing to sue, and (2) Defendant's regulations are constitutional. Both of Defendant's arguments fail.

As a threshold matter, the finality requirement does not apply to facial challenges. *Grand*, 159 F.4th at 515. This is because a facial challenge represents a plaintiff's position that "no set of circumstances exists under which the challenged enactment or action would be lawful." *Id.* (internal citations and quotations omitted). Waiting for a final decision from

the government in that instance is pointless, because, if no set of circumstances exists under which the challenged enactment or action is lawful, then there is no reason to wait on the government to provide its definitive position. *Id.* Thus, the fact that Defendant has not taken a definitive position regarding the definition of "events" does not affect Plaintiffs' facial challenges.

**1. Plaintiffs suffered an injury-in-fact.**

Although there is no finality requirement, the plaintiff still must plead an injury-in-fact to have standing to raise a facial challenge. *See Miller v. City of Wickliffe*, 852 F.3d 497, 506 (6th Cir. 2017) (holding that plaintiffs lacked standing to bring their facial challenge). To satisfy the injury-in-fact requirement, a plaintiff must show "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations and quotations omitted).

In Defendant's motion, it relies heavily on the fact that Plaintiffs had not "received a single sanction from the Township." ECF No. 22 PageID.682. According to Defendant, this means that "the only purported harm Plaintiffs can allege is that the Township threatened possible enforcement action." *Id.* Defendant further argues that Plaintiffs can not show that the threated enforcement is "certainly impending" as required by the Supreme Court to satisfy the injury-in-fact requirement. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

After filing its motion, however, Defendant issued Plaintiffs a citation. ECF No. 26 PageID.718.

This cured any standing deficiency that Plaintiffs may have suffered. *Marras v. City of Livonia* helps illustrate this point. 575 F. Supp. 2d 807 (E.D. Mich. 2008). There, the court reiterated the principle that the plaintiffs only had standing to "challenge the ordinance provisions that have resulted in some concrete injury in fact." *Id.* at 814. The court held that the citation the defendant issued to the plaintiffs for allegedly violating a zoning ordinance constituted concrete harm that gave the plaintiffs standing to sue. *Id.* The same is true here. When Defendant issued Plaintiffs a citation for violating the one-event-per-week restriction, Plaintiffs suffered an injury-in-fact that conferred upon them standing to sue.

**2. Defendant's factual-based arguments are inappropriate at the 12(b)(6) stage.**

The remainder of Defendant's argument challenges the factual allegations of Plaintiffs' facial challenges and asks this court to draw inferences from Plaintiffs' factual allegations in favor of Defendant. While the court does not have to "accept as true a legal conclusion couched as a factual allegation," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 268 (1986)), the court does have to take Plaintiffs' factual allegations as true and construe all reasonable inferences in Plaintiffs' favor when analyzing a 12(b)(6) motion to dismiss. *Paris*, 175 F.4th at 795.

Here, Defendant does not argue that Plaintiffs pled mere legal conclusions; rather, Defendant argues that Plaintiffs' factual allegations are wrong and that the court should draw its inferences in favor of Defendant. For example, Defendant argues that "Plaintiffs' statements that the amendments were invalidated are completely false." ECF No. 22 PageID.683. Defendant also argues that the court should disregard Plaintiffs' allegation that the one-event-per-week restriction has caused them harm because "this limitation was clearly

confined to activities in the Backyard's outside 'yard' area and did not apply to activities occurring inside the restaurant or patio." *Id.* PageID.687. In other words, Defendant asks this court to infer that the one-event-per-week restriction only applies to the Backyard's yard area—in direct contrast to Plaintiffs' factual allegations and to the inference they give rise to, that Defendant's restriction applies to all of the Backyard. Defendant goes on to argue that its restrictions are narrowly tailored and pass constitutional muster. *Id.* at 688. But Defendant bases its argument on inferences that it draws from Plaintiffs' factual allegations in its own favor, which is simply inappropriate at the 12(b)(6) motion to dismiss stage.

A 12(b)(6) motion to dismiss is not the vehicle through which to litigate the validity of the underlying factual allegations of Plaintiffs' claims.[4] *See, e.g.*, *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) ("A judge may not grant a 12(b)(6) motion to dismiss based on a disbelief of a complaint's factual allegations."); *Williams v. Clerac, LLC*, No. 1:21–cv–572, 2021 WL 3860521, at *2 ("It is black letter law that material factual disputes cannot be resolved at the 12(b)(6) stage but only by way of a Rule 56 motion following discovery."). All a 12(b)(6) motion to dismiss asks is this: did the plaintiff allege sufficient facts, accepted as true, to survive the motion to dismiss? *Ashcroft*, 556 U.S. at 678. The court will not peek behind the curtain into the credibility of the underlying factual allegations when answering that question.

[4]The court acknowledges that a Rule 12(b)(6) motion to dismiss may be converted into a Rule 56 motion for summary judgment, but that only occurs when "matters outside the pleadings are presented and not excluded by the court[.]" Fed. R. Civ. P. 12(d). The parties here did not raise matters outside the pleadings, so the court will attempt to convert Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint into a motion for summary judgment.

The court therefore declines to reach Defendant's factual-based arguments. Because Defendant does not argue that Plaintiffs failed to plead sufficient factual allegations to support their facial challenges, the court need not analyze that issue either.[5]

The court concludes that Plaintiffs' facial challenges in Counts I–VII survive Defendant's motion. Those claims will remain.

### C. The court denies Defendant's Motion to Dismiss Plaintiffs' First Supplemental Complaint.

In their First Supplemental Complaint, Plaintiffs pled a First Amendment retaliation claim. ECF No. 33. To state a claim for First Amendment retaliation, the plaintiff must plead three elements:

> (1) the plaintiff was engaged in a constitutionally protected activity, (2) the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights.

*Jenkins v. Rock Hill Loc. Sch. Dist.*, 513 F.3d 580, 585–86 (6th Cir. 2008).

Defendant's Motion to Dismiss Plaintiffs' First Supplemental Complaint, like its Motion to Dismiss Plaintiffs' First Amended Complaint, raises both 12(b)(1) and 12(b)(6) challenges. The court finds that both fail here.

#### 1. Plaintiffs' First Amendment retaliation claim is ripe.

The crux of Defendant's Motion to Dismiss Plaintiffs' First Supplemental Complaint is similar to that of its Motion to Dismiss Plaintiffs' First Amended Complaint: that the claim is not ripe. Once more, Defendant focuses on finality and argues that Plaintiffs did not satisfy

[5] Nevertheless, the court notes that Plaintiffs did plausibly plead their facial challenges.

the finality requirement because they did not seek clarification from the ZBA. ECF No. 35 PageID.866.

If Plaintiffs' alleged constitutionally protected activity solely arose from their land use—and therefore turned on the constitutionality of Defendant's zoning ordinances—then the court would agree with Defendant. But that's not what Plaintiffs pled; instead, Plaintiffs pled that the alleged constitutionally protected activity was the very filing of this lawsuit. ECF No. 36 PageID.895 ("Plaintiffs here are not alleging retaliation for the refusal to issue a permit; rather, the Township issued them a citation in retaliation for filing this lawsuit."). Plaintiffs claim that the reason Defendant issued a citation to them was because Plaintiffs filed this lawsuit. And, as the Sixth Circuit has recognized, filing a lawsuit is "clearly protected activity under the First Amendment." *Eckerman v. Tenn. Dep't of Safety*, 636 F.3d 202, 208 (6th Cir. 2010).

As explained above, the finality requirement applies in the land-use context to ensure that courts can understand exactly how far the government regulation goes when assessing the constitutionality of the regulation. *Pakdel*, 594 U.S. at 479. The finality requirement does not apply in a situation like this one where the claim does not turn on the constitutionality of Defendant's regulations. Thus, Defendant's finality argument fails, and Count IX does not present a ripeness issue.

**2. Plaintiffs plausibly pled a claim for First Amendment retaliation.**

Defendant next argues that Plaintiffs have not adequately pled a claim for retaliation. The court disagrees. Plaintiffs plausibly pled all three elements of their First Amendment retaliation claim.

First, Plaintiffs pled that they engaged in a constitutionally protected activity: the filing of this lawsuit. ECF No. 33 PageID.852. Defendant argues that none of Plaintiffs' pled activities constituted constitutionally protected activity. ECF No. 35 PageID.873. Plaintiffs pled three constitutionally protected activities: (1) filing this lawsuit, (2) "communicating with Township officials concerning the ordinance and its enforcement," and (3) "hosting and entertaining guests on their property." ECF No. 33 PageID.852. Only one activity needs to be constitutionally protected for Plaintiffs to have plausibly pled this first element of their claim. *See Davis v. Robert*, 192 F. Supp. 3d 847, 856 (E.D. Mich. 2016) ("[E]ven assuming that Plaintiff's statements at the Harvard program were not protected conduct, Plaintiff's other alleged actions—filing a lawsuit contending that government officials violated state law and criticizing those officials in the media—clearly are protected."). And, as stated above, filing a lawsuit is "clearly protected activity." *Eckerman*, 636 F.3d at 208. Thus, whether the other two pled activities are constitutionally protected is irrelevant here. Because Plaintiffs pled that they engaged in constitutionally protected activity by filing this lawsuit, Plaintiffs plausibly pled the first element of their retaliation claim.

Second, Plaintiffs pled that Defendant took adverse action against them when Defendant issued Plaintiffs a citation after Plaintiffs filed their lawsuit. ECF No. 33 PageID.852–853. Defendant does not appear to challenge whether Plaintiffs plausibly pled this element; and, in any event, the court concludes that they did. Plaintiffs pled Defendant took adverse action against them by (1) issuing the citation, (2) increasing inspections, and (3) threatening further enforcement. *Id.* Taking Plaintiffs' factual allegations as true and

drawing all inferences in their favor, the court finds that Plaintiffs plausibly plead the second element of their retaliation claim.

Finally, Plaintiffs pled that Defendant's citation issuance was motivated at least in part by Plaintiffs filing of this lawsuit. ECF No. 33 PageID.853. Defendant argues that Plaintiffs' sole causal link between Defendant's adverse action and Plaintiffs' constitutionally protected activity is temporal proximity, which is inadequate on its own to support a claim for retaliation. ECF No. 35 PageID.875. The court agrees that temporal proximity alone is insufficient to establish the necessary causal connection for element three of a relation claim. *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 737 (6th Cir. 2006). But Plaintiffs did not plead temporal proximity alone. They pled temporal proximity and other retaliatory conduct; namely, that Defendant increased inspections and began threatening "ongoing enforcement and additional sanctions" after Plaintiffs filed this lawsuit *Id.* at PageId.852–853. And, as the Sixth Circuit has recognized, temporal proximity "coupled with other indicia of retaliatory conduct" is sufficient to show a causal connection. *Randolph*, 453 F.3d at 737. Because Plaintiffs pled temporal proximity coupled with other indicia of retaliatory conduct, Plaintiffs plausibly pled the third element of their retaliation claim.

Taking Plaintiffs' factual allegations as true and construing all reasonable inferences in Plaintiffs' favor, the court concludes that Plaintiffs plausibly pled a First Amendment retaliation claim.

## IV. CONCLUSION

The court therefore **GRANTS** in part and **DENIES** in part Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint. ECF No. 21. The court **DENIES** Defendant's

Motion to Dismiss Plaintiffs' First Supplemental Complaint. ECF No. 34. The as-applied portions of Plaintiffs' claims in Counts I-VII are dismissed without prejudice and Count VIII is dismissed without prejudice. The facial portions of Plaintiffs' claims in Counts I-VII remain and Count IX remains.

**IT IS SO ORDERED.**

Date: October 15, 2026

/s/ Paul L. Maloney
Paul L. Maloney
United States District Judge